Exhibit A

CARL D. SHERMAN 2006 TRUST

November  30,_____, 2006

<u>CARL D. SHERMAN 2006 TRUST</u>

DECLARATION OF TRUST made on November 30 , 2006, by CARL D. SHERMAN of Fort Lauderdale, Florida (herein called the "Donor"), who proposes to transfer property to the said CARL D. SHERMAN and MARJORIE SUISMAN of Brookline, as trustees (herein with their successors in trust called the "trustees").  The trustees shall hold, administer and dispose of all property which they may at any time receive as such trustees, IN TRUST, in accordance with the following provisions.

<u>ARTICLE FIRST</u>

<u>NAME AND NATURE OF TRUST</u>

1.1     <u>Name</u>.  This Declaration of Trust may be referred to as the "CARL D. SHERMAN 2006 TRUST" under declaration of trust dated November 30 , 2006.

1.2     <u>Power to Amend and Revoke</u>.  The Donor reserves the power at any time and from time to time to amend or revoke in whole or in part the terms and provisions of this Declaration of Trust and the trusts hereby created, by an instrument in writing executed by the Donor; provided, however, that no such amendment or revocation shall be effective unless also notarized, or signed by at least one witness, or delivered to a trustee during the Donor's lifetime.  No trustee shall be liable for failing to follow the requirements of any amendment to this Declaration of Trust prior to having received a copy of the amendment.  Upon any revocation the trustees shall distribute the trust property to which such revocation applies to the Donor or as the Donor directs in writing.  This Declaration of Trust shall be irrevocable after the Donor's death.

## ARTICLE SECOND

## DISPOSITION OF TRUST PROPERTY

2.1     Disposition During Donor's Lifetime.   During the Donor's lifetime, so much of the net income and principal of the trust as the Donor directs or, if the Donor is unable to direct, as the trustees deem advisable shall be paid to or applied for the benefit of the Donor.   If the trustees determine in good faith that the Donor has become incapacitated, so much of the net income and principal as the trustees determine may also be paid to or applied for the benefit of JUDI BELLUCCI, the Donor's issue, persons dependent upon the Donor for support, and persons designated by the Donor in writing prior to such incapacity. Any such income not so paid or applied may be added to principal or held for like payment, application or addition at such later time or times as the trustees determine.   Upon the Donor's death the trust property, including any property added to the trust following the Donor's death, shall be disposed of as hereinafter provided.

All dispositions of trust property at any time after the death of the Donor shall be subject to the payment of any taxes and other amounts as provided for in ARTICLE SIXTH.

2.2     Trusts Upon Donor's Death.   At the Donor's death, if JUDI BELLUCCI is then living, then all trust property not otherwise disposed of under the preceding provisions of this Declaration of Trust shall be divided into two shares.   One share for the benefit of JUDI BELLUCCI shall be set aside in a separate trust -- the Trust for Judi Bellucci -- as hereinafter provided.   The Trust for Judi Bellucci may be divided into separate trusts as provided in ARTICLES FOURTH and SIXTH.   After setting aside the property

-2-

designated below in the Trust for Judi Bellucci, the trustees shall dispose of the remaining trust property under the Provision for Issue provision of this ARTICLE SECOND.

At the Donor's death, if JUDI BELUCCI is then deceased, then all trust property not otherwise disposed of under the preceding provisions of this Declaration of Trust shall be disposed of under the Provision for Issue provision of this ARTICLE SECOND.

2.3     Trust for Judi Bellucci.  If at the Donor's death JUDI BELLUCCI is then living, the trustees shall set aside the following property, free of all estate and inheritance tax, to be held and administered as provided below as the Trust for Judi Bellucci:

(a)  Any interest the Donor may own at the time of his death in real property located at 724 S.W. 12th Avenue, Fort Lauderdale, Florida, or any replacement property purchased by the Donor prior to his death and designated as such in a writing filed with the records of this Trust; plus

(b)  An amount equal to one-third (1/3) of the value of the Donor's net remaining estate.  The value of the Donor's net remaining estate shall be determined by taking the value of the Donor's adjusted gross estate as finally determined for Federal estate tax purposes and deducting the following:

i.  The value, as so determined, of the real property described in Section 2.3(a) above;

ii.  Federal and state estate or inheritance taxes;

iii.  Debts of the Donor as of the date of the Donor's death;

iv.  Expenses of administering the Donor's estate.

The determination by the trustees of the value of the Donor's net remaining estate, if made in good faith, shall be conclusive and binding on all parties in interest.

The entire net income from any property held in the Trust for Judi Bellucci shall be paid to or applied for the benefit of JUDI BELLUCCI, at least quarterly, for life. The trustees also may pay to or apply for the benefit of JUDI BELLUCCI for her health and comfortable support such amounts of principal, including the entire trust principal, as they may determine from time to time.

Upon the death of JUDI BELLUCCI, the Trust for Judi Bellucci shall terminate. Upon such termination any accrued and undistributed income of the Trust for Judi Bellucci shall be paid to her estate and the remaining property of the Trust for Judi Bellucci shall be distributed, subject to the Continuing Trusts provision of this ARTICLE SECOND, to the Donor's then living issue by right of representation."

2.4    Provision for Issue. Upon the death of the Donor, all trust property not otherwise disposed of under the preceding provisions of this Declaration of Trust shall be distributed, subject to the Continuing Trusts provision of this ARTICLE SECOND, to the then living issue of the Donor, by right of representation, and in default of such issue said trust property shall be disposed of under the Contingent Remainder provision of this ARTICLE SECOND.

2.5    Continuing Trusts. Any trust property distributable upon the Donor's death or by reason of the termination of a trust under this ARTICLE SECOND to a beneficiary under the age of thirty for whom no other trust is held under this ARTICLE SECOND shall instead be set aside in a separate trust for that beneficiary, to be known as that

-4-

beneficiary's Continuing Trust.  So much of the net income and principal of each Continuing Trust as the trustees from time to time deem advisable shall be paid to or applied for the benefit of one or more of the beneficiary and the beneficiary's issue living from time to time for their health, education and comfortable support, in such amounts and manner and at such times as the trustees determine.  The trustees at any time or times may make unequal distributions among the persons eligible to receive income and principal or exclude any one or more of them.  Any income not so paid or applied may be added to principal or may be held for later payment to or application for the beneficiary or any issue of the beneficiary, or addition to principal, as the trustees determine.  Any payment of principal may be charged against all or such part or parts of the Continuing Trust at its termination as the trustees determine.

Each Continuing Trust shall terminate when the beneficiary with respect to whom the Continuing Trust was established attains the age of thirty or sooner dies.  Upon termination, the Continuing Trust property shall be distributed to the beneficiary if then living, and otherwise to and among one or more persons and organizations, including the beneficiary's estate, outright or upon such terms or trusts and with such further powers of appointment, as the beneficiary may have specified by will with express reference to this general power of appointment.  Insofar as a beneficiary fails to exercise validly this power of appointment, upon the death of the beneficiary the property in the beneficiary's trust shall be distributed, subject to the provisions respecting continuing trusts set forth in this section, to the beneficiary's then living issue, by right of representation, and in default of such issue to those relatives of the Donor by blood or adoption as under the laws of the Commonwealth of

-5-

Massachusetts then in force would have inherited the beneficiary's personal estate if the beneficiary had then died owning only such trust property, a resident of Massachusetts, intestate, unmarried, and survived only by said relatives, in the proportions provided by said laws.

Any trust property distributable upon the Donor's death or by reason of the termination of a trust under this ARTICLE SECOND, including this section, to a beneficiary for whom a trust is already held under this ARTICLE SECOND, including this section, shall be added to and disposed of as a part of such trust.

This Continuing Trusts provision shall not apply to distributions pursuant to the exercise of a power of appointment created under this Declaration of Trust.

2.6     Contingent Remainder.  If at any time after the death of the Donor any trust property is not otherwise disposed of under any other provision of this Declaration of Trust, such trust property shall be distributed, subject to the Continuing Trusts provision of this ARTICLE SECOND, to JUDI BELLUCCI if she is then living and otherwise to those persons who under the laws of the Commonwealth of Massachusetts then in force would have inherited the Donor's personal estate if the Donor had then died owning only such trust property, a resident of Massachusetts, intestate, and unmarried, in the proportions provided by said laws.

2.7     Delayed Distributions.  The time of any required distribution of principal, other than pursuant to the exercise of a power of appointment, to any individual (other than the Donor) may be delayed and the property retained by the trustees if the trustees determine it to be in the best interests of that beneficiary.  Any property so retained shall be

-6-

held, for such period as the trustees determine, as a Continuing Trust under the Continuing Trusts provision of this ARTICLE SECOND, except that the age requirements of that provision shall not apply.  Any such decision to delay distribution shall be reviewed by the trustees at least annually.

2.8     Termination of Trusts.  Notwithstanding any other provision of this Declaration of Trust, each separate trust held hereunder shall terminate twenty-one years after the death of the survivor of JUDI BELLUCCI, the Donor, and such of the Donor's issue as were living at the date of the Donor's death.  Furthermore, if at any time after the death of the Donor any separate trust held hereunder shall, in the opinion of the trustees, become uneconomic or inadvisable for any other reason to administer as a trust, the trustees, if they determine it to be in the best interests of the beneficiaries then eligible to receive the income therefrom, may terminate such trust.  Upon any termination provided for in this section, the property of the terminated trust shall be distributed, free of the Continuing Trusts and Delayed Distributions provisions of this ARTICLE SECOND, to or for the benefit of one or more of the beneficiaries who are then eligible to receive the income therefrom, in such amounts and shares as the trustees determine.

2.9     Issue and Adopted Children; Spouses.  Under this Declaration of Trust the term "issue" shall mean descendants of all generations.  An adopted child of any generation and that child's issue, including adopted issue, shall have the same rights as if the adopted child were a natural child of the adopting parent.

If a power of appointment under this Declaration of Trust includes the power to appoint to spouses of persons, such spouses shall include the widows and widowers of such persons.

2.10   <u>Limitation on Trustees' Discretionary Powers</u>.   A trustee may not participate in any exercise of discretionary powers that would discharge a personal legal obligation of that trustee.  A person who is both a trustee of a trust hereunder and a beneficiary of that or any other trust hereunder may participate in a decision to make a loan or discretionary distribution from that trust to or for the benefit of a beneficiary, or to terminate that trust, only if the trustees limit the purpose of the resulting loan, distribution or termination to the beneficiary's health, education or support in reasonable comfort (subject to any more restrictive purpose provided in that trust) after taking into account all other financial resources available to the beneficiary.  This paragraph shall not apply to the Donor so long as the Donor has the power to revoke this Declaration of Trust.

No person may exercise any discretionary powers as trustee with respect to any trust that has received property disclaimed by that person.

ARTICLE THIRD

SUCCESSION OF TRUSTEES

3.1   <u>Powers to Appoint and Remove</u>.   The Donor may at any time or times appoint or revoke the appointment of additional or successor trustees and remove any trustee then acting hereunder.  Subject to the foregoing, the trustees of any separate trust hereunder may at any time or times appoint one or more additional trustees of that trust -- with the

consent, however, of a majority of the beneficiaries, if any, of that trust as then are eligible to receive the income of the trust, of full age, and legally competent.

      3.2   <u>Successors</u>. Subject to the Donor's powers above, the succession of trustees shall be as follows. If and when CARL D. SHERMAN ceases to act as trustee, no vacancy shall be created thereby and the remaining trustee may serve as sole trustee hereunder.

      There shall at all times be at least one Independent Trustee, as hereinafter provided, of each separate trust hereunder. A vacancy shall exist only when there is no Independent Trustee in office, even if at a previous time more than one trustee may have served together.

      If a vacancy occurs in the trusteeship of any trust hereunder and no successor has been named by the Donor as provided above, then the vacancy shall be filled by an Independent Trustee designated in writing by the trustee whose departure created the vacancy. Any vacancy not filled as provided above may be filled by a successor Independent Trustee appointed by a majority of such of the beneficiaries, if any, of the separate trust as then are eligible to receive the income therefrom, of full age, and legally competent, and otherwise by any court of proper jurisdiction.

      A trustee shall be deemed to be an Independent Trustee when such trustee has no vested or contingent interest in the trust property; cannot be benefited by the exercise of discretion in determining distributions of income or principal; can posses such discretion without causing trust income or principal to be attributable to a beneficiary for any purpose; and is not a related or subordinate party with respect to a beneficiary of that trust within the

-9-

meaning of Section 672(c) of the Internal Revenue Code (read as if the beneficiary were a grantor).

     3.3   <u>Change of Trustees; Formalities</u>.  Pending acceptance of the office and duties of trustee by any successor trustee, the trustee or trustees then in office shall have, subject to the Limitation on Trustees' Discretionary Powers provision of ARTICLE SECOND, all the powers, duties, discretions, and exemptions given to the trustees.  Except in the case of an appointment by a court, any appointment, revocation of appointment, designation, change of designation, resignation, or removal of a trustee must be in writing and signed.  A trustee may resign at any time as trustee of any trust, such resignation to be effective when delivered to any co-trustee or, if none, to any beneficiary.  A removal, other than by the Donor's amendment of this Declaration of Trust, shall be effective when delivered to the trustee being removed.  For purposes of this ARTICLE THIRD, a beneficiary shall be deemed legally competent if of full age unless the trustees have received notice that a guardian or conservator has been appointed for such beneficiary.

     3.4   <u>Incapacity of Trustee</u>.  If a trustee of any trust shall become incapable of performing the duties of trustee by reason of advanced age or mental or physical incapacity, the determination in writing of such incapacity by the other trustees of that trust or, if none, by the person designated next to succeed such incapacitated trustee, if made in good faith, shall terminate such trusteeship and shall be binding upon all persons interested.

     3.5   <u>Replacement of Trustees by Beneficiaries</u>.  With respect to any separate trust hereunder, at any time or times (unless the Donor objects in writing) but not more frequently than once in any three year period a majority of the beneficiaries of that trust who

-10-

then are eligible to receive the income of that trust, twenty-five years of age or over, and

otherwise legally competent, may remove any trustee serving thereunder, provided that at the

same time the removing beneficiaries appoint a bank, trust company, or professional

individual trustee as successor trustee.  Notwithstanding any other provision of this

Declaration of Trust, any such removal and appointment, and the acceptance of such

appointment, shall be by an instrument in writing signed and acknowledged by each

signatory before a notary public, and shall take effect simultaneously as of a date specified in

said instrument which is not earlier than thirty days after delivery of a copy of such

instrument to the trustee being so removed.

### ARTICLE FOURTH

### GENERAL ADMINISTRATIVE PROVISIONS

4.1     Income.  Except as otherwise provided, all accumulated, accrued and undistributed income of a deceased income beneficiary, including the Donor, which has not been paid prior to the death of such person shall be income of the next succeeding estate.

4.2     Accounting.  The trustees of each trust held hereunder shall from time to time render an account to each income beneficiary of that trust; provided, however, that if the trustees have received notice that a guardian, conservator, executor, or other fiduciary has been appointed for an income beneficiary, the account shall be rendered to such fiduciary. "Income beneficiary" shall mean each person who is eligible to receive income from the trust during the period covered by the account; provided, however, that any such person who has a parent or more remote ancestor also eligible to receive income during such period shall not be deemed to be an income beneficiary for purposes of this section.  The assent to such account by a majority of such income beneficiaries and fiduciaries shall fully discharge the trustees as to all matters included in such account or reflected thereby.  The failure of any income beneficiary or fiduciary to object to any account by a writing received by the trustees within sixty days after the delivery to such person of a copy of the account shall be deemed to be an assent by such person.

4.3     Spendthrift Clause.  No person to whom any reversionary, future, or expectant interest in any trust hereunder is given, nor any person entitled to any income of any such trust, shall have power to alienate or dispose of such interest or income by

anticipation or to subject the same to his debts or liabilities, and no such interest or income may be reached to pay such person's debts or liabilities.

    4.4    <u>Disclaimers by Beneficiaries</u>.  The whole or any portion of any interest in any trust property may be disclaimed by the beneficiary thereof, and such whole or portion shall, except as otherwise specifically provided in ARTICLE SECOND and subject to the provisions hereinafter contained in this section, be disposed of as if such beneficiary had died immediately preceding the event causing such beneficiary's interest to vest.

    4.5    <u>Insurance Policies</u>.  With respect to any insurance policies on the Donor's life of which the trustees are designated as beneficiaries, the Donor may, without the consent of the trustees or any beneficiary:  (i) sell, assign or hypothecate such insurance policies, (ii) exercise any option or privilege granted by such policies including but not limited to the rights to convert and change the beneficiary, (iii) borrow any sum in accordance with the provisions of such policies, and (iv) receive all payments, dividends, surrender values, benefits or privileges of any kind which may accrue on account of such policies.

    If at any time the trustees own any insurance policies on the life of a trustee (other than the Donor), any of the incidents of ownership of such policies may be exercised only by the other trustees.

    4.6    <u>Trust for Judi Bellucci</u>.  If at any time unproductive property is held in the Trust for Judi Bellucci or if reserves from the income thereof have been established, the trustees shall, if JUDI BELLUCCI so requests in writing, dispose of such unproductive property and discontinue such reserves within a reasonable time.

    If the Donor and JUDI BELLUCCI are married at the time of the Donor's death, the trustees may divide the Trust for Judi Bellucci into two or more separate Trusts for Judi Bellucci, to be held upon the same terms as if there had been no division, to reflect partial or different marital deduction elections for state and Federal estate tax purposes to be made by the persons administering the Donor's estate.  References in this Declaration of Trust to a "Trust for Judi Bellucci" shall include the Trust for Judi Bellucci and any separate Trusts for Judi Bellucci into which it has been divided pursuant to ARTICLES FOURTH or SIXTH. The allocation of property between separate Trusts for Judi Bellucci shall be made so as to minimize the aggregate amount of Federal and state estate taxes payable by reason of the Donor's death.

    The Donor intends that all Trust for Judi Bellucci property be eligible for all Federal and state estate tax marital deductions applicable to the Donor's estate if the Donor and JUDI BELLUCCI are married at the time of the Donor's death. This Declaration of Trust shall be interpreted and all questions resolved to accomplish this intention.

4.7   Forfeiture of Benefits.  If any beneficiary shall contest the probate or validity of the Donor's will or any provisions thereof or shall contest the validity of this trust instrument or any provisions hereof or shall institute or join in, except as a party defendant, any proceeding to contest the validity of the Donor's will or to prevent any provision thereof from being carried out in accordance with its terms (not including a petition for instructions for the interpretation of the will instituted in good faith and for probable cause), or shall institute or join in, except as party defendant, any proceeding to contest the validity of this trust instrument or to prevent any provision hereof from being carried out in accordance with its terms (not including a petition for instructions for the interpretation of this trust, instituted in good faith and for probable cause), then all benefits for such beneficiary are revoked and this instrument shall be interpreted as if the beneficiary had predeceased the Donor.

In addition, the Donor directs that his children permit JUDI BELLUCCI to maintain sole possession of and reside in the residence located at 528 Pequot Avenue, New London, Connecticut for a period of no less than six months after his death. If any child of the Donor takes any action to contest or interfere with JUDI BELLUCCI's possession and enjoyment of said residence during the six month period following the Donor's death, then all benefits for said child of the Donor under this Trust are revoked and this instrument shall be interpreted as if said child had predeceased the Donor.

Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree to all the provisions of this trust instrument and this provision is an essential part of each and every benefit conferred.

## ARTICLE FIFTH

## TRUSTEE PROVISIONS

5.1   Discretionary Powers.  Whenever in this Declaration of Trust the trustees are empowered to make a determination, they shall have absolute discretion in making such determination, unless otherwise specifically provided. The exercise of any discretion by the trustees, if made in good faith, shall be conclusive and binding upon all persons interested.

Unless otherwise specifically provided in this Declaration of Trust, in making discretionary distributions the trustees may, but need not, take into account other financial resources available to the beneficiaries, the total value of the trust, prevailing rates of dividends and interest relative to historical rates of return on capital, and the total return of the trust, and may use a so-called unitrust approach respecting distributions.

Any expression in this Declaration of Trust of a wish of the Donor is intended merely as guidance and does not create any binding obligation or trust.

-13-

5.2     Disclaimers and Releases by Trustees.  Any trustee of a trust hereunder may at any time disclaim or release any power in whole or in part by an instrument in writing, signed and delivered to any co-trustee or, if none, to any beneficiary of that trust. Any disclaimer or release of a power by a trustee may be upon such conditions as the trustee specifies, and shall not affect the continuance of the power in any co-trustee.  In addition, the trustees may disclaim any interest in property.  A disclaimer or release by a trustee shall be binding upon the successors to the trustee unless the trustee specifies otherwise.

5.3     Certificate by Trustee.  A written statement by a trustee of any trust hereunder at any time as to facts relative to such trust may always be relied upon by, and shall always be conclusive evidence in favor of, any transfer agent or other person dealing in good faith with the trustees in reliance upon such statement.

5.4     Bond.  No trustee shall be required to give bond or furnish surety on any bond required by law.

5.5     Liability of Trustees.  No trustee shall be liable for the acts or omissions of any co-trustee, prior trustee, or person administering any estate.  Unless requested in writing by a beneficiary a trustee shall not be obligated to inquire as to any such acts or omissions or to ascertain that the property transferred to him is the entire trust property.

5.6     Delegation to Co-Trustee.  Whenever there is more than one trustee of a trust, a trustee of that trust may delegate any trustee powers and discretions to a co-trustee for such period or periods of time as the trustees may agree; provided, however, that any powers or discretions withheld from any trustee by the terms of this Declaration of Trust may not be delegated to such trustee under this section.

5.7     Compensation.  The trustees shall be entitled to reasonable compensation, which they may charge to income or to principal or partly to each.

5.8     Powers of Trustees.  Except as may be specifically provided otherwise in this Declaration of Trust, the trustees of each trust hereunder can act only by unanimous agreement. The trustees of each trust hereunder shall have wide discretion in matters of the management of trust property, and the following enumeration of specific powers is not intended to exclude other powers reasonably incidental to such management.  Except where specifically provided otherwise in this Declaration of Trust, the trustees of each trust shall have in addition to those powers conferred by law or otherwise the following powers, privileges and exemptions, which they may exercise and invoke in their absolute discretion:

(a)     To administer, invest, and reinvest trust funds in any state or jurisdiction and in any property (including, without limitation, interests in investment companies, mutual funds, common trust funds, limited partnerships and other pooled investments without the necessity of notice to beneficiaries) whether or not of a kind or in a

-14-

proportion ordinarily considered suitable for trust investments and whether or not income producing or marketable.

(b)     To make secured or unsecured loans to any person, including any estate; with respect to mortgages and other security agreements, to modify the terms thereof, to release partially, to foreclose, and to purchase at foreclosure sales.

(c)     To participate in any reorganization, recapitalization, merger or similar transaction; to give proxies or powers of attorney, which may be discretionary and with power of substitution, for voting upon or acting in respect of any shares or certificates of interest belonging to a trust regardless of whether the terms of the proxies or powers may extend beyond the term of the trust; to register or to qualify for exemption from registration any securities held by any trust.

(d)     To manage real property, including authority to erect, alter, or demolish buildings, to adjust boundaries, to dedicate streets or other ways for public use without compensation, to improve, repair, insure, subdivide and vacate any of such property, and to impose easements, restrictions, conditions, stipulations and covenants.

(e)     To sell any trust property at public or private sale; to borrow money in any amount, for any purpose, and upon any terms that the trustees determine; to mortgage or pledge with power of sale any trust property and to lease, grant options and make contracts concerning any trust property for such periods and upon such other terms as the trustees determine, regardless of whether the mortgages, pledges, leases, options and contracts may extend beyond the term of the trust; to exchange or partition all or any part of the property of any trust, real or personal, at any time held, without order or license from any court; to purchase or exercise any form of option or right to purchase securities or other property; to execute any and all deeds and other instruments necessary or appropriate to accomplish the foregoing, with or without covenants, warranties or representations.

(f)     To employ depositories or custodians on behalf of any trust; to permit all or any part of the trust property to be held at any one or more places, in any state or jurisdiction; to carry stock certificates and any other trust property in the form of street certificates or in the name of a nominee of the trustees or of any other person, or in any other form, without disclosing the existence of any trust.

(g)     To hold separate trusts or any shares of a trust in one or more consolidated funds in which the separate trusts or shares have undivided interests.

(h)     To make any division or distribution in cash or in kind or in undivided interests in specific property or partly in each, at then current values, without regard to the basis or other income tax attributes of specific property allocated to any beneficiary (including any trust which is a beneficiary).

(i)     To make any payment or distribution directly to a beneficiary who is a minor or who is otherwise incompetent, or to such beneficiary's guardian, conservator or custodian under the Uniform Transfers to Minors Act, or (if the payment is not from a Trust for Judi Bellucci) to a relative for such beneficiary's use or any trust then being held for such beneficiary.

(j)     To employ accountants, attorneys-at-law and other professionals, and to rely upon their opinions; to employ a trustee or a firm in which a trustee has an interest to perform necessary services for the trust on customary terms.

(k)     To determine in accordance with reasonable accounting practice what shall belong and be chargeable to principal and what shall belong and be chargeable to income; to amortize or not amortize bond premiums; to retain reserves out of income for expenses, taxes, and other liabilities; if any trust property is subject to actual depreciation, depletion or obsolescence, to retain or not retain reasonable reserves out of income, irrespective of any change in the market value of such trust property.

(l)     To settle, by compromise or arbitration or otherwise, any and all taxes on future interests and any and all other claims and demands in favor of or against or in any way relating to trust property, upon such terms as the trustees determine.

(m)     To hold life insurance policies in any trust and to pay the premiums therefor, but without any obligation to pay such premiums; to insure for the benefit of any trust the life of any person in whom a beneficiary has an insurable interest, said insurance to be in such amounts and on such terms as the trustees determine; to borrow any sum in accordance with the provisions of such policies; to dispose of any insurance owned by any trust in such manner and at such times as the trustees determine, whether by lapse, cancellation or otherwise; provided, however, that the trustees shall not be obligated to take any action toward collection of the proceeds of any life insurance unless indemnified against loss or expense occasioned thereby.  No insurance company need see to the application of any amount paid by it to the trustees, a receipt by the trustees to be a full discharge of the insurance company with respect to such payment.

(n)     To investigate, prevent and remediate violations or possible violations of Federal, state or local law regarding substances posing a hazard to the environment or to human health which may be applicable to any property held by the trustees; to undertake such actions prior to the formal enforcement of such laws by any Federal, state or local agency against trust property; to charge all expenses associated with any such investigation, prevention or remediation, including the fees of consultants and counsel, against the income or principal of the trust holding the property.

5.9     <u>Donor May Assume Investment Responsibility</u>.  The Donor may assume responsibility for the investment of all or part of the trust property, and the trustees shall have no liability with respect to such investments.

-16-

5.10   <u>Acquisition and Retention of Certain Assets</u>. The trustees of any trust are authorized to use trust principal, including the entire principal of the trust, to purchase any property or interest in property, real or personal, in which the Donor has or at any time had an interest. The trustees may retain indefinitely or for such other period as they determine any such property or interest in property so purchased by them, or any property given to them by the Donor or any other person, or received from any estate, whether or not the property is income producing and without regard to the proportion which the value of the property may bear to the total value of the trust even if such retention involves business or financial risks that trustees would not ordinarily incur, provided that such retention is not contrary to any provisions governing Trusts for Judi Bellucci hereunder. The trustees shall have no liability for any depreciation or loss as a result of the retention of any property retained or acquired under the authority of this section.

5.11   <u>Real Estate</u>. The trustees of any trust may acquire or retain real property, whether or not income producing, for long term investment or the rent free use of one or more of the beneficiaries eligible to receive the income from that trust, upon such equitable terms as the trustees determine but in the case of the Trust for Judi Bellucci subject to the provisions governing such trust. The trustees may execute, assume or redeem any note or mortgage on such real property, with the trust income or principal or both, but in the case of the Trust for Judi Bellucci subject to the provisions governing such trust, and may likewise pay taxes, insurance premiums, and general expenses of upkeep, maintenance and repair with respect to such property.

5.12   <u>Investment Advisors</u>. The trustees may employ investment advisors and consult with them on all matters relating to the purchase, retention, or sale of trust property. The trustees may act upon the advice of such advisors in whole or to such extent as they determine, and to the extent that they follow the advice of such advisors they shall not be liable for losses or other consequences therefrom. The trustees may pay any investment advisor reasonable compensation as a trust expense, which may be charged to income or to principal or partly to each. An appropriate adjustment shall be made in the compensation of the trustees to reflect the change in their duties which results from such employment.

5.13   <u>Trustees' Power to Amend</u>. In addition to the Donor's power to amend this Declaration of Trust, at any time or from time to time after the Donor's death or during the Donor's incapacity, the trustees may amend this Declaration of Trust if they determine that such amendment is appropriate (a) to cure ambiguities, inconsistencies or defects in this Declaration of Trust, (b) to enable the trustees more effectively to carry out a purpose or wish expressed in this Declaration of Trust, or (c) for the more convenient or efficient administration of any trust hereunder. Any trustee (other than the Donor) who also is a beneficiary (or a person with a legal obligation to support a beneficiary) under this Declaration of Trust shall not participate as trustee in any decision under this section to amend (or not to amend) any provision of this Declaration of Trust. Any such amendment shall be made by a writing signed by all of the trustees except those disqualified under this

-17-

section to participate in the decision to amend, acknowledged by at least one trustee who signed the instrument of amendment, and a copy delivered to the Donor if living. This power to amend shall be exercisable by the trustees only in a fiduciary capacity and shall not be exercisable (1) to alter any of the Donor's powers under this Declaration of Trust, or (2) unless consented to by all the then current income beneficiaries (as defined in the Accounting provision of ARTICLE FOURTH) or their guardians or conservators, to alter any power of the beneficiaries to replace trustees.

Notwithstanding any other provision of this section, the trustees shall not amend this Declaration of Trust in any way that would permit persons or entities to become trustees who are prohibited by ARTICLE THIRD from serving as trustees.

## ARTICLE SIXTH

## TAXES AND EXPENSES

6.1    <u>Payments to the Donor's Estate</u>.  The trustees shall give to the persons administering the Donor's estate such amounts (whether due with respect to trust property or otherwise) as pursuant to the Donor's will may be requested by such persons for the payment of the Donor's debts, administration and funeral expenses, any legacies provided for in the Donor's will, income taxes payable by the Donor's estate, estate and inheritance taxes due by reason of the Donor's death, and generation-skipping transfer taxes on direct skips. The trustees may rely upon any such request and the amounts included therein without computing the sums involved, and may make such payments directly. The trustees may make such loans to or purchases from the Donor's estate upon such terms and conditions as they determine.

6.2    <u>Allocation of Taxes and Expenses Upon Donor's Death</u>.  Unless otherwise specified in this Declaration of Trust, payments for debts, expenses and taxes pursuant to Section 6.1 shall first be charged to or paid from trust property other than property set aside for any Trust for Judi Bellucci provided for in this Declaration of Trust. Insofar as possible, assets held under this Declaration of Trust, or the proceeds thereof, which are not subject to state or Federal estate, inheritance or similar tax by reason of the Donor's death shall not be used to satisfy any payment made pursuant to Section 6.1. In selecting the source of funds for payments pursuant to Section 6.1 the trustees shall not select, to the extent possible in accordance with the priorities set forth in this section, any assets the use of which for such payments would cause an acceleration of income, estate or excise tax (other than capital gains tax on appreciation of property occurring after the Donor's death) with respect to such property.

Any tax on future interests payable at any time with respect to any property held in a Trust for Judi Bellucci shall, in such proportions as the trustees deem equitable, be charged first to other property held under this Declaration of Trust or to any reserves established by the trustees for that purpose.

6.3     Allocation of Taxes Upon Judi Bellucci's Death.  If the Donor and JUDI BELLUCCI are married at the time of the Donor's death, at the death of JUDI BELLUCCI, the trustees, unless otherwise directed in her will, shall pay to JUDI BELLUCCI's estate or to the appropriate tax authorities so much of her state estate taxes as they determine represents the increase in such taxes fairly attributable to property of the Trust for Judi Bellucci hereunder, to the end that the state estate taxes payable from her estate shall not exceed such taxes computed as if such Trust for Judi Bellucci or trusts were not taxable to said estate.

If the Donor and JUDI BELLUCCI are married at the time of the Donor's death, at the death of JUDI BELLUCCI, if property is held in any Trust for Judi Bellucci with respect to which a Federal estate tax marital deduction was elected in the Donor's estate, then the trustees, if requested by the persons administering JUDI BELLUCCI's estate, shall pay to her estate the amount, if any, which said estate is entitled to recover under Section 2207A of the Internal Revenue Code.

Any tax payable by the trustees pursuant to this section shall be charged only against the trust, or proportionately against the trusts if more than one, with respect to which such tax is payable, unless otherwise directed either in JUDI BELLUCCI's will or in Section 6.4.  In selecting the source of funds for payments pursuant to this section the trustees shall not select, to the extent possible, any assets the use of which for such payments would cause an acceleration of income, estate or excise tax (other than capital gains tax on appreciation of property occurring after the Donor's death) with respect to such property.

6.4     Generation-Skipping Transfer Tax Exempt Property.  If the Donor and JUDI BELLUCCI are married at the time of the Donor's death, and if all or part of the GST exemption under Section 2631 of the Internal Revenue Code available to the Donor or the JUDI BELLUCCI is to be allocated to any trust created under this Declaration of Trust, then the trustees shall segregate the portion of the trust property to which any GST exemption is intended to be allocated into a separate exempt trust to be held upon the same terms as if there had been no separation of trust property except that any such separate exempt trust shall have an inclusion ratio of zero, to the end that the property in such separate exempt trust and all income and principal payments and distributions therefrom shall be exempt from the generation-skipping transfer tax imposed by Section 2601 of the Internal Revenue Code.

If the trustees make payments pursuant to Section 6.1 or 6.2 of this ARTICLE SIXTH, and if any of the Donor's GST exemption has been or is intended to be allocated to a trust to which such payments are to be charged pursuant to Sections 6.1 and 6.2, then such payments shall be charged first to the separate trust, if any, of the same terms to which no GST exemption has been or is intended to be allocated before they are charged to the separate trust of the same terms to which any GST exemption has been or is intended to be allocated.

If the trustees make payments pursuant to Section 6.3 of this ARTICLE SIXTH, and if any of the Donor's or JUDI BELLUCCI's GST exemption has been or is

-19-

intended to be allocated to a trust to which such payments are to be charged pursuant to Section 6.3, then, unless otherwise directed in JUDI BELLUCCI's will, such payments shall be charged first to the separate trust, if any, of the same terms to which no GST exemption has been or is intended to be allocated before they are charged to the separate trust of the same terms to which any GST exemption has been or is intended to be allocated.

If at any time any property which has an inclusion ratio greater than zero for generation-skipping transfer tax purposes would be commingled in a trust with property which has an inclusion ratio of zero, then the trustees shall instead keep such properties segregated in separate trusts, exempt and non-exempt, to be held on the same terms, and only property which has an inclusion ratio of zero shall be allocated to the exempt trust or trusts, to the end that the property in such exempt trust or trusts and all income and principal payments and distributions therefrom shall be exempt from the generation-skipping transfer tax imposed by Section 2601 of the Internal Revenue Code.  To the extent possible, distributions to a non-skip person as defined by Section 2613 of the Internal Revenue Code shall be made from a non-exempt trust created pursuant to this paragraph of which such person is a beneficiary, and distributions to a skip person as defined by Section 2613 shall be made from an exempt trust so created of which such person is a beneficiary.

If any property to which no GST exemption has been or is intended to be allocated is transferred to a trust hereunder by the lifetime gift of, or by reason of the death of, a transferor (as defined for generation-skipping transfer tax purposes) of such property, and if a descendant (other than the transferor) of a parent of that transferor, or a descendant of a parent of the spouse or former spouse of that transferor, dies no later than ninety days following such transfer, then with respect to the disposition of such property such descendant shall be deemed to have died before the earlier of the date of the transfer or the transferor's death, notwithstanding any other provision of this Declaration of Trust.  If the descendant is the Donor's spouse, the preceding sentence shall not apply.  This paragraph shall not affect any nomination or appointment of a fiduciary.

For purposes of this section, property that is grandfathered from the application of the generation-skipping transfer tax provisions of the Internal Revenue Code shall be treated as property to which GST exemption has been allocated.

## ARTICLE SEVENTH

## MISCELLANEOUS PROVISIONS

7.1    Applicable Law.  This Declaration of Trust shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts, and its validity and administration shall be governed by said laws except with respect to such assets as are required by the law controlling to be governed by the laws of some other jurisdiction.

7.2     References.  References in this Declaration of Trust to the masculine shall include the feminine and the plural the singular, and vice versa, unless the context requires otherwise.  References to provisions of the Internal Revenue Code mean provisions of the Internal Revenue Code of 1986 as amended from time to time or the corresponding provisions of any subsequent Federal tax law.  The term "state" shall include the District of Columbia.

7.3     Delivery.  A document or notice shall be deemed delivered when it is mailed first class, postage prepaid, to the addressee's last known address, or, if not mailed, when actually delivered to the addressee in person or to the addressee's last known address.

7.4     Effective Date of Trust.  This Declaration of Trust shall be effective when signed by the Donor, whether or not then acknowledged by the Donor or signed by a trustee.

IN WITNESS WHEREOF, I, CARL D. SHERMAN, Donor, do hereby declare that I sign and execute this instrument willingly in the presence of each of the witnesses who sign below, and that I execute it as my free and voluntary act for the purposes herein expressed, at

NEW LONDON_____, Connecticut, on November 30_____, 2006.

Carl D. Sherman

We, the undersigned witnesses, each do hereby declare in the presence of the aforesaid Donor and the presence of each other that the Donor signed and executed this instrument as his inter vivos trust in the presence of each of us, that the Donor signed it willingly,

that each of us hereby signs this trust instrument as witness in the presence of the Donor and each other, and that to the best of our knowledge the Donor is eighteen years of age or over, of sound mind, and under no constraint or undue influence.

_Barrett Seymour_     residing at _Newden Connecticut_

_Colleen DeMello_     residing at _Essex, Connecticut_

STATE OF CONNECTICUT       )

                              ) ss.   New London   November 30, 2006

COUNTY OF   NEW LONDON      )

          The within-named **Barrett Seymour** and **Colleen DeMello**, being duly sworn depose and say that they witnessed the execution of the within trust instrument of the within-named Donor, Carl D. Sherman, and subscribed the same in his presence and at his request and in the presence of each other; that the said Carl D. Sherman, at the time of the execution of said trust instrument appeared to them to be of full age, and of sound mind and memory; and that he signed said trust instrument in their presence; and that they make this affidavit at the request of the Donor.

_Barrett Seymour_

_Colleen DeMello_

        Subscribed, sworn to and acknowledged before me by the said Donor and witnesses who are personally known to me or who produced valid identification ( ), on **November 30**, 2006.

_Amy M. Phillips_ , Notary Public

Commissioner of the Superior Court

My commission expires: _____

-22-

Exhibit B

## LAST WILL

## CARL D. SHERMAN

_November   30_____, 2006

I, CARL D. SHERMAN of Fort Lauderdale, Florida, make this my Last Will, hereby revoking all wills and codicils previously made by me.  I make this Last Will in contemplation of my marriage to JUDI BELLUCCI and intend it to take effect whether or not we marry prior to my death.

FIRST.  Tangible Personal Property.  I give and bequeath all tangible personal property located in my residence, presently 724 S.W. 12th Avenue, Fort Lauderdale, Florida, or in any replacement residence I purchase prior to my death, to JUDI BELLUCCI if she survives me and otherwise to my issue surviving me, by right of representation, to be divided among them as they may agree or, failing agreement, as my executors in their absolute discretion determine.

To the extent that I have an interest therein, I give the following items of tangible personal property located in the residence at 528 Pequot Avenue, New London, Connecticut to JUDI BELLUCCI, if she survives me and otherwise to my issue surviving me, by right of representation, to be divided among them as they may agree or, failing agreement, as my executors in their absolute discretion determine:

(a)     Items presently located in kitchen:

(i)     Contents of kitchen cabinets and drawers
(ii)    Contents of pantry
(iii)   Wedding basket and its contents
(iv)    Bar glasses
(v)     Russian tea set
(vi)    Oriental dish service
(vii)   Dinner service pieces
(viii)  Oriental tea set

(ix)    Composer tea set

(x)    Judi Bellucci's family's personal items presently located in glass cabinets

(xi)    Wine rack

(xii)    Candles, linens & service items located in bottom cabinets of glass cabinets

(xiii)    Whale punch bowl and serving platter

(xiv)    (2) Hurricane lamps located on black credenza

(xv)    Plants & linens located in black credenza

(xvi)    Sterling silver flatware and service items located in black credenza

(xvii)    Linens in black credenza Pottery vase

(xviii)    Plants and plant stands in kitchen

(xix)    Lladro swan, Lladro Grampa fishing with small boy, angel, duck, eagle, porpoise, seagull, manatee located on shelf above deck door

(xx)    All articles located on shelves above glass cabinets and kitchen cabinets

(xxi)    Portuguese lamp

(xxii)    Personal photos

(xxiii)    Wall basket and antique linens

(xxiv)    Cook books

(xxv)    Hanging fish and seashell

(xxvi)    Service trays on shelf including steal cutting board

(xxvii)    Mixer, knives, grill, stored on countertops

           (b)    Items presently located in foyer and hall downstairs:

(i)    Pottery (2) jars by front door

(ii)    Oriental pottery jars by bathroom door

           (c)    Items presently located in living room:

(i)    Crystal lamp

(ii)    Small painted lamp

(iii)    Mirror

(iv)    Personal items and decorative items on mantel

(v)    Cocktail table

(vi)    TV and stand

(vii)     Asian jars (8) and stands

(viii)    Italian pottery jars (2)

(ix)      Green plate and stand

(x)       Service items located in lower cabinet

(xi)      Silver service items

(xii)     All plants and plant stands

(d)       Items presently located in my bedroom:

(i)       Personal photos

(ii)      Monopoly game

(iii)     Personal clothing stored in closet

(iv)      Travel accessories

(v)       Linens

(vi)      Treadmill

(vii)     Vacuum cleaner

(viii)    ½ Hull of Tar Baby

(e)       Items presently located in Judi Bellucci's bedroom and bath:

(i)       All items including: books, computer, TV, VCR, clocks, clothes, plants, jewelry and furniture

(ii)      Green jelly jar cabinet located in hall outside bathroom

(f)       Items currently located in basement:

(i)       Photos

(ii)      storage boxes

(g)       Items presently located in garage:

(i)       Planting table and planting items

(ii)      White drop-leaf table

(iii)     Craft items and materials

(h)       Items presently located in attic over garage:

(i)     Christmas items

(ii)    Personal storage

In addition, I give to JUDI BELLUCCI the use of all remaining tangible personal property located in said residence for a period of six months after my death.

To the extent that I have an interest therein, I give the following items of tangible personal property located in the office used by JUDI BELLUCCI at Shaw's Cove, New London, Connecticut to JUDI BELLUCCI, if she survives me and otherwise to my issue surviving me, by right of representation, to be divided among them as they may agree or, failing agreement, as my executors in their absolute discretion determine:

(i)     Sectional Desk

(ii)    Two Printers

(iii)   Computer hardware

(iv)    Personal items including all photos and paperwork

(v)     Personal books and files

I give and bequeath all my remaining tangible personal property to my issue surviving me, by right of representation, to be divided among them as they may agree or, failing agreement, as my executors in their absolute discretion determine.  If exact equality of division cannot practicably be achieved, my executors may make equalizing distributions in cash from my remaining estate.  Currency and investment metals shall not be deemed tangible personal property for purposes of this Last Will.

SECOND.  Real Estate.  Any interest in real property I may own at the time of my death shall pass as part of my remaining estate.

THIRD.  Remaining Estate.  I give, devise and bequeath all my remaining estate, real and personal, not including, however, any property over which I may have a

-4-

power of appointment by will, to the trustee or trustees then serving as such under the CARL

D. SHERMAN 2006 TRUST of November 30, 2006, executed prior to this Last

Will, to be added to the trust property and held, administered and disposed of in accordance

with the terms of said Trust as it may be amended from time to time.  If said Trust is not in

existence or insofar as this gift is for any reason ineffective I give said remaining estate IN

TRUST, nevertheless, to be held, administered and disbursed as a testamentary trust, in the

manner and to the persons and upon the same terms and conditions as are set forth in the

CARL D. SHERMAN 2006 TRUST as of the date of execution of this Last Will.

FOURTH.  Disclaimers by Beneficiaries.   The whole or any portion of any

interest under this Last Will may be disclaimed by the beneficiary thereof, and such whole or

portion shall be disposed of under this Last Will as if such beneficiary had died immediately

preceding the event causing such beneficiary's interest to vest.

FIFTH.  Adopted Child.   An adopted child of any generation and such child's

issue, including adopted issue, shall have the same rights under this Last Will as if such

adopted child were a natural child of the adopting parent.

SIXTH.  Omission of Issue.   Insofar as I have failed to provide in this Last

Will for any issue of mine whether born before or after my death, such failure is intentional

and not occasioned by accident or mistake.  Notwithstanding any other provision of this Last

Will, with respect to the disposition of any property as to which no GST exemption has been

or is intended to be allocated, any descendant of mine who dies no later than ninety days

following my death shall be deemed to have predeceased me.  The preceding sentence shall

not affect any nomination or appointment of a fiduciary.

SEVENTH.  Forfeiture of Benefits.  If any beneficiary shall contest the probate or validity of this Last Will or any provisions hereof or shall institute or join in, except as a party defendant, any proceeding to contest the validity of this Last Will (or any trust to which property may pass hereunder) or to prevent any provision of this Last Will (or any such trust or trusts) from being carried out in accordance with its terms (not including a petition for instructions for the interpretation of the Last Will instituted in good faith and for probable cause), then all benefits for such beneficiary are revoked and this instrument shall be interpreted as if the beneficiary had predeceased me.

In addition, it is my wish that my children permit JUDI BELLUCCI to maintain sole possession of and reside in the residence located at 528 Pequot Avenue, New London, Connecticut for a period of no less than six months after my death.  If any child of mine shall take any action to contest or interfere with JUDI BELLUCCI's possession and enjoyment of said residence during the six month period following my death, then all benefits for said child of mine under this Last Will are revoked and this instrument shall be interpreted as if said child had predeceased me.

Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree to all the provisions of this Last Will and this provision is an essential part of each and every benefit conferred.

EIGHTH.  Guardians ad litem.  I request that in connection with the allowance of the accounts of any fiduciary under this Last Will or any other proceeding relating to my estate, the representation by a guardian ad litem of the interests of persons unborn or

-6-

unascertained or the interests of any other person be dispensed with insofar as permitted by law.

NINTH.  Executors.  I appoint S. JOEL SUISMAN to be the executor of this Last Will.  I request that the same persons named herein as executors, upon application, be appointed temporary executors, in the same order of succession.  No person administering my estate under this Last Will, whether named herein or not, shall be required to furnish surety on any bond and no such person shall be liable for, nor unless requested by a beneficiary shall be obliged to inquire into, the acts or omissions of any other such person.

TENTH.  Taxes and Expenses.  There shall be paid from the general assets of my probate estate as expenses of administration:  (a) generation-skipping transfer taxes on direct skips only; (b) all Federal, state and foreign estate, inheritance, transfer, succession and similar taxes (other than generation-skipping transfer taxes), including interest and penalties thereon, which may become due by reason of my death except (i) taxes with respect to property over which I may have a power of appointment created by another person, and (ii) taxes with respect to property passing under a will or trust created by another person; (c) all income taxes, including interest and penalties thereon, payable by my estate; and (d) my last illness expenses.

I authorize my executors to request such amounts from the CARL D. SHERMAN 2006 TRUST as they deem advisable for the payment in whole or in part of all taxes which are to be paid from the general assets of my probate estate, my debts and funeral expenses, the expenses of administering my estate, and any legacies provided for in this Last

-7-

Will.  In any event, my executors shall request from said Trust such amounts as may be necessary to insure the satisfaction of any bequests and devises included in this Last Will.

References in this Last Will to the Internal Revenue Code shall be deemed to refer to the Internal Revenue Code of 1986 as amended at the time of my death, or to the corresponding provisions of any subsequent Federal tax law then in effect.

ELEVENTH.  Executors' Powers.  My executors, whether or not personally interested in the exercise of any such power, shall have the powers set forth below in addition to those conferred by law or otherwise.  References in this Last Will to my executors shall mean the person or persons administering my estate under this Last Will, whether or not named herein and regardless of the title by which they are denominated under local law.

(a)  To administer, invest and reinvest the assets of my estate and, without liability for depreciation or loss, to retain until distribution any property owned by me at the time of my death; to make secured or unsecured loans upon such terms as my executors may determine.

(b)  To sell at public or private sale or otherwise dispose of any part of my estate, real or personal, for any purpose whatsoever and without license from any court; to exercise any form of option or right to purchase securities or other property; to borrow with or without security upon such terms as my executors may determine.

(c)  To compromise or adjust by arbitration any claim in favor of or against my estate, any tax payable by my estate and any controversy as to the interpretation of this Last Will or the administration of my estate, including the determination as to which articles of tangible personal property are included under any specific bequest made in this Last Will.

(d)  To pay debts and legacies, with or without interest, at any time without obtaining the assent, or making any adjustment in favor, of any beneficiary under this Last Will.

-8-

(e)    To make any payment, division or distribution under this Last Will in cash or in kind, or partly in each (including non-pro-rata distributions of undivided interests in property), at such valuations as my executors may deem just and proper, and the decision and valuation of my executors if made in good faith shall be final and conclusive upon all persons interested.

(f)    To make any payment or distribution directly to an incompetent beneficiary, to a relative for such beneficiary's use, or to such beneficiary's guardian, conservator, or custodian under the Uniform Transfers to Minors Act.

(g)    To pay any expenses involved in the delivery of any articles of tangible personal property and to charge the same as an expense of administration.

(h)    To maintain insurance on all property in my estate, whether or not specifically devised or bequeathed, against such perils and liabilities and for such periods and amounts as my executors deem advisable; and to transfer to the beneficiary to whom property is devised or bequeathed any insurance on said property, whether existing or purchased by my executors, with or without compensation therefor.

(i)    To make any election or allocation available to my estate, whenever my executors in their sole discretion determine that it is advisable to do so, including without limitation the election of an alternate valuation date, the election of the special use method of valuation, the election to treat as Qualified Terminable Interest Property for estate or gift tax purposes any or all property which qualifies for such treatment, the deduction for income tax purposes of any expense of my estate, the election of the method of payment under any plan, policy or contract, the allocation of the tax basis of any property in my gross estate, and the allocation of any GST exemption available to me at my death to property passing under this Last Will or otherwise.  Any decision regarding any such election or allocation, if made in good faith, shall be binding and conclusive on all concerned irrespective of the effect on the amount or allocation of the burden of any tax.  Compensating adjustments as between income and principal or as between beneficiaries may be made in the discretion of my executors but shall not be required.

(j)    To employ accountants, attorneys-at-law, investment advisors and other professionals, including an executor or a firm in which an executor has an interest, to perform necessary services for my estate on customary terms; to rely upon the opinions of such professionals; and to employ depositories or custodians on behalf of my estate.

(k)    To investigate, prevent and remediate violations or possible violations of Federal, state or local law regarding substances posing a hazard to the

environment or to human health which may be applicable to any of my property; to undertake such actions prior to the formal enforcement of such laws by any Federal, state or local agency against my property; to charge all expenses associated with any such investigation, prevention or remediation, including the fees of consultants and counsel, against my estate.

(l)     To join in the filing of any Federal or State joint income tax return for any year without duty to give or obtain consideration therefor or to make compensating adjustments.

IN WITNESS WHEREOF, I, CARL D. SHERMAN, the undersigned testator, do hereby declare that I sign and execute this instrument as my Last Will, that I sign it willingly in the presence of each of the witnesses who sign below, and that I execute it as my free and voluntary act for the purposes herein expressed, at New London                    , Connecticut, on November 30            , 2006.

                                                    Carl D. Sherman

Subscribed, sealed and declared to be his Last Will by the said Carl D. Sherman in the presence of us, and, in his presence, and at his request, and in the presence of each other, have hereunto subscribed our names as witnesses this _____ day of _____, A.D. 2006.

_____   residing at  Nerdon Connecticut

_____   residing at  Essex, Connecticut

-10-

STATE OF CONNECTICUT

)

COUNTY OF New London ) ss.   City: New London   Date: November 30, 20

)

Then and there personally appeared the within-named Barrett Seymour

and Colleen DeMello who, being duly sworn, depose and say: That they

witnessed the execution of the within Last Will of the within-named Testator, Carl D.

Sherman; that said testator subscribed said Last Will and declared the same to be his Last

Will and Testament in their presence; that they thereafter subscribed the same as witnesses in

the presence of said testator and in the presence of each other and at the request of said

testator; that the said testator, Carl D. Sherman, at the time of the execution of said Last Will

appeared to them to be of full age and of sound mind and memory; and that they make this

affidavit at the request of the Testator.

_____ witness

_____ witness

Subscribed, sworn to and acknowledged before me by the said Testator and

witnesses who are personally known to me or who produced valid identification

(_____), on November 30 , 2006.

(seal)

_____
Susan M. Phillips                    , Notary Public
Commissioner of the Superior Court
My commission expires: _____